**TUANAITAU and ROPATI TIMUIALA, Objectors**
**v.**
**SASA'E PAOGOFIE, Applicant**

## No. 82-1963

## High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Vaieli" in Iliili]

September 12, 1963

Lolo, Counsel for Sasa'e Paogofie.
Apelu Galea'i, Counsel for Ropati Timuiala.

OPINION OF THE COURT

MORROW, *Chief Justice.*

Sasa'e Paogofie filed his application with the Registrar of Titles to have certain land designated by him as Faa-

toaga Fou registered as his individually-owned land. The application was accompanied by a survey of the land proposed to be registered. The survey showed that the area of the land is 8.35 ± acres.

Ropati Timuiala filed an objection to the proposed registration claiming that the land involved was the communal family land of the Timuiala Family. Tuanaitau filed a similar objection claiming that the same land was the communal family land of the Tuanaitau Family. Hence, this litigation. See Sec. 10.0112, Code of American Samoa, 1961 Ed. The Court viewed the land in the presence of Ropati and Paogofie and some others on the day preceding the hearing.

At the beginning of the hearing, Tuanaitau withdrew his objection and was dismissed as a party in the case.

The land involved in this case is attached to the Village of Iliili.

To establish his claim to the land, Paogofie, who is 52 years old, in substance testified that while he was born on the Island of Aunu'u, he was nevertheless brought to Iliili when he was about six years of age and that he lived in the Muli Family there. He also testified that when he was a boy only fifteen years of age he hired about half a dozen young men, all older than himself, ranging in age from 17 years to 22 years, some possibly older, and that he and these young men then proceeded to clear the land from the virgin bush. Paogofie testified that they would work possibly a couple of days a week and then not for two weeks and that the clearing was finished in 1929, and that then he put in plantations on the cleared land. This part of Paogofie's testimony was corroborated by Tia and Leota, who testified that they worked with Paogofie in clearing the bush. Paogofie further testified that he had had actual, exclusive, continuous, and peaceable possession of the land from the time of the clearing up to the present time and had used the

fruits of the land during that time, claiming the land as his individually-owned property. Paogofie introduced in evidence a written statement by the present holder of the Timu title (we understand he lives in Vatia and not Iliili where his title is located) in which he disclaims ownership of the land by the Timu Family. He is an aiga of Paogofie, both being members of the Timu Family.

Ropati, who is about 80 years old, testified that when he was a small boy he went on the land with his father, who was clearing the land from the virgin bush, and that when he was about 17 years old he began to swing an axe to help his father in clearing the land; that this father began clearing it a good many years before the Government was established in 1900. He also testified that the Timu people (his father was a Timu) put in plantations after the clearing and used the produce of the land. He further testified that the land was Vaieli and not Faatoaga Fou as claimed by Paogofie, and that the land in dispute was included in a larger tract named Vaieli. The Timuiala title is attached to the Village of Iliili. Ropati further testified that he put up a house on the disputed tract in 1961 and that someone cut it to pieces. Paogofie had notified Ropati, his old blood uncle, to get his house off the land and to vacate it. Ropati had returned to Tutuila in 1958 after concluding his missionary journeys in Upolu, where he went to school for seven years in preparation for his missionary work. He is a faifeau.

Ropati is the brother of Paogofie's mother, who was a Timu woman.

Patea, between 80 and 90 years of age, testified that he was born in Iliili and lived there before going to Vaitogi to hold the Patea title; that he worked on land adjoining Vaieli and saw Ropati's brother working on the disputed land; that he knew Paogofie and that when Paogofie came from Aunu'u to visit in Iliili, he visited the Timu Family

there. In view of the faa-Samoa, it would be natural for him to stay with the Timu Family when in Iliili rather than any other family. The Samoan judges are chiefs well versed in faa-Samoa, and they assure the writer of this opinion that in their judgment this would be true, and that fits squarely into the testimony of Patea that when Paogofie came from Aunu'u, where he was born, he visited the Timu Family. We must not overlook the fact that Paogofie's mother was a Timu woman.

Patea testified that he worked with Ropati's brother in the area involved before the establishment of the Government. Patea worked on the land Asuemu while Ropati's brother worked on Vaieli. Patea also testified that the land Vaieli, admittedly Timu land, includes the land in dispute. Patea also testified that he had seen not only Ropati's brother working on the land but also Ropati's father, who held the Timu title. He also saw Ropati himself working on the disputed tract. Patea is very familiar with the land in dispute. He further testified that he and Ropati's brother planted the first coconut trees in the area. He did not know who planted the short coconut trees on the land in dispute. However, the testimony of Pele, a lady 79 years of age, explains that point very clearly. She testified that it was Ropati's brother, Paogofie Elisara, and that while she was living in Pavaiai (she is a Paogofie woman and Paogofie Sasa'e is her matai) she gathered coconuts and gave them to Ropati's brother, who planted them in the disputed tract. She thought that maybe she was around 58 years old at the time.

Pele also testified that she was familiar with the land in dispute and that it was included in the land Vaieli and that she had seen Ropati's brother Elisara cultivating it. She also testified that when Paogofie Sasa'e got the Paogofie title in 1938, he came from Aunu'u where he was born. Her

379

family approved Sasa'e to be the matai of the Paogofie Family.

The judges saw the witnesses and heard them testify. We believe Ropati's testimony, also the testimony of Patea and the testimony of Pele. We think, in view of all the circumstances, that they testified truthfully. Furthermore, they were in a position to know the truth of the matters about which they testified.

■ Now we also believe that Paogofie Sasa'e worked on this land and that he did so as a member of the Timu Family, his mother being a Timu woman and the daughter of the holder of the Timu title. And we believe this despite the very serious conflict in the testimony.

■ The Samoan judges assure the writer of this opinion that back in 1926 it was not faa-Samoa for a 15-year-old boy to hire six boys and men all older than himself and then clear land from the virgin bush and claim it as the 15-year-old boy's individually-owned property. Nor would it be faa-Samoa today. And the writer of this opinion agrees with the Samoan judges with respect to this matter. It seems strange to the Court that a 15-year-old boy back in 1926, when there was very, very little money in the Island, could have gotten the money, in view of the Samoan way of life, to buy pisupo for himself and six employees, all older than himself, while they were clearing bush land.

■ The Samoan people acquired title to their land through first occupancy coupled with a claim of ownership, as this Court has held many times. *Soliai v. Lagafua*, No. 5-1949 (H.C. of Am. S.); *Faataliga v. Fano*, No. 80-1948 (H.C. of Am. S.); *Gi v. Te'o*, No. 35-1961 (H.C. of Am. S.). This doctrine of acquisition of title by first occupancy coupled with a claim of ownership is approved in Maine's Ancient Law (3rd Am. Ed.) 238. Also see 2 Blackstone 8.

■ We believe from the testimony, despite the conflict therein, that the disputed land is a part of the land Vaieli and that it was first cleared from the bush and occupied and claimed by Timu people and that it is the communal land of the title Timuiala attached to the Village of Iliili and that the greater weight of evidence is to this effect, and we so find.

■ There is another point to consider, and that is the matter of adverse possession for 20 years by Paogofie. Counsel for Paogofie claims title in his client through adverse possession. Under Samoan customs (faa-Samoa), which this Court must recognize when not in conflict with the laws of American Samoa or the laws of the United States concerning American Samoa (Sec. 1.0102, Code of American Samoa, 1961 Ed.), communal family land is owned by the Samoan family as such and each member of the family has a right to the use of a portion of the family land. The members of the family are not strictly tenants in common or joint tenants, as those terms are understood in American and English law. However, the relationship of the members of the family to the land is analogous to a considerable extent to that of cotenants as understood in American and English law. Because of this analogy, we think that one member of a family could not acquire title to communal family land adversely to other members of the family even though he should have actual, open, notorious, exclusive, and hostile possession for 20 years without first giving actual notice to other members of the family of his claim of ownership in himself as an individual.

"In the absence of facts showing that a cotenant in sole possession holds such possession in opposition to the rights of his cotenants, his occupancy will be presumed to be that of a tenant in common, the cotenancy being recognized. In case of tenants in common, the presumption is that the possession is not adverse to, but in common with, the other cotenants. Possession originating in

381

cotenancy is presumably permissive, not hostile. Indeed, the presumption is strongly against every claim by a cotenant by which he seeks to convert the circumstance of an apparently individual possession into an advantage over his associates. The presumption that a cotenant in possession does not hold adversely to his cotenants but in common with them is strong, and cogent proof is required to overcome it. It continues until a possession legally adverse to the possessor's cotenants is established. To terminate the presumption there must be some hostile act, conduct, or declaration on the part of the possessor amounting to a repudiation of his cotenants' rights and an assertion of exclusive title in himself, of which his cotenants have knowledge or notice." 3 American Jurisprudence 2d, 257–259.

 We do not believe that Paogofie, a Timu Family member, had exclusive possession of the land in dispute since he informed the Court when it viewed the land in the presence of himself, Ropati, and some other people prior to the hearing that some Timu family members had been getting some of the fruits of the land. Also, we may remark that Paogofie's order to his uncle Ropati in 1961 to take his house off the land and vacate it did not constitute notice of an assertion of an exclusive title in himself 20 years ago, nor did it constitute such notice in 1961 to any member of the Timu Family other than Ropati.

 If Paogofie has claimed the land as his individually-owned land since 1926, it is a little difficult to see why he waited 37 years to offer it for registration.

It is our conclusion that the surveyed land should be registered as a part of the land Vaieli and that it should be registered as the communal family land of the Timuiala Family of Iliili.

DECREE

Accordingly, it is ORDERED, ADJUDGED AND DECREED that the surveyed land, as shown and described in the survey accompanying Paogofie's application to register

such land as his individually-owned land, shall be registered as the communal family land of the Timuiala Family of Iliili and that the land so registered shall be described in the registration as a portion of the land Vaieli attached to the Village of Iliili.

Paogofie Sasa'e, the applicant, paid a substantial sum to have the survey made. The benefit of the survey will inure to the Timuiala Family. Under these circumstances, we think it only fair that Ropati Timuiala, the objector, should pay the court costs in this case.

Accordingly, costs in the amount of $37.50 are hereby assessed against Ropati Timuiala, the same to be paid within 30 days.